## 0In the U.S. District Court for the Eastern District of North Carolina

| | |
|---|---|
| Guy Ferrante )<br>)<br>and )<br>)<br>Deborah Ferrante )<br>)<br>Plaintiffs, )<br>)<br>V. )<br>)<br>Westin St. John Hotel Co. )<br>)<br>Registered Agent: )<br>Corporation Service Co. )<br>1201 Hay St. )<br>Tallahassee, FL 32301-2525 )<br>)<br>and )<br>)<br>Vistana Signature Vacations )<br>)<br>Registered Agent: )<br>The Corporation Trust Co. )<br>1209 Orange Street )<br>Wilmington, DE 19801 )<br>)<br>Defendants. ) | FILED<br>JUN 1 9 2018<br>PETER A. MOORE, JR., CLERK<br>US DISTRICT COURT, EDNC<br>BY _____ DEP CLK<br><br>No. 4:18-CV-108-D |

## COMPLAINT

1. Plaintiffs are citizens and residents of the state of North Carolina.

2. Defendants are diversely incorporated business enterprises with their principal places of business consolidated at 9002 San Marco Ct., Orlando, FL 32819.

3. The amount in controversy exceeds $75,000.00. Infra.

4. This Court has original diversity jurisdiction over this action. 28 U.S.C. § 1332.

5. Venue is proper in this Court because defendants conduct business in North Carolina.

6. Defendant Westin sells timeshare interests at property that it owns on the U.S. Virgin Island of St. John.

7. Defendant Vistana is, for want of a better description, the manager of the foregoing St. John property.

8. Over the course of several years, Plaintiffs purchased 3 timeshare interests at the Westin St John Resort.

9. The purchase agreements (adhesion contracts) that Plaintiffs and defendants signed reflected Plaintiffs' agreement to pay annual maintenance fees; defendants' web sites memorialized the same obligation.

10. In due course, however, Plaintiffs came to realize that they were being billed annually for 3 sets of maintenance fees and also for 3 sets of "point assessments."

11. "Maintenance fees" have an accepted definition that common people like Plaintiffs know and understand.

12. "Point assessments" defy such common understanding; Plaintiffs were never advised of, and still do not know, what they are or how they are calculated; Plaintiffs know only that each annual "point assessment" was roughly double each annual maintenance fee.

13. Plaintiffs asked defendants to explain why they were being billed for "point assessments" that they had never agreed to pay.

14. Without further explanation, defendants summarily demanded that Plaintiffs pay both annual maintenance fees and also annual "point assessments," as billed.

15. Plaintiffs requested documentation showing that they ever agreed to pay both maintenance fees and "point assessments."

16. Defendants responded with 400+ pages of utterly irrelevant documents, none of which obligated Plaintiffs to pay both maintenance fees and "point assessments," much less suggested Plaintiffs'

agreement to do so; indeed, the words "point assessment" did not even appear within that voluminous documentation.

17. Defendants nonetheless still demanded that Plaintiffs pay 3 separate annual maintenance fees plus 3 separate annual "point assessments."

18. By 2017, two (2) of Plaintiffs' timeshares (Interest #1 and Interest #2) still carried purchase loans on them; the third timeshare (Interest #3) was held lien-free by Plaintiffs.

19. Nonetheless, defendants proceeded to formally deny Plaintiffs access to, and use of, all 3 of their timeshares pending payment of all 3 sets of maintenance fee and "point assessment" charges.

20. During 2017, Defendants delivered to Plaintiffs 2 "Settlement" forms pertaining to Interests 1 and 2, which still carried purchase loan balances.

21. Interest #1 had a fair market value of $38,100.00 and an outstanding loan balance of $31,778.98, meaning that Plaintiffs had equity of at least $6,321.02 in that timeshare. *Attachment 1*.

22. Interest #2 had a fair market value of $51,100.00 and an outstanding loan balance of $42,199.37, meaning that Plaintiffs had equity of at least $8,900.63 in that timeshare. *Attachment 2*.

23. Plaintiffs expressly declined defendants' 2 settlement offers because they collectively required forfeiture of their entire accumulated equity in both Interests #1 and #2 ($15,221.65) in exchange for defendants forgiving merely about $5,000.00 in total maintenance fees and "point assessments" charges, most of which Plaintiffs did not owe in the first place.

24. Then, in October and November, 2017, defendants unilaterally and secretly canceled the outstanding purchase loans on Interests #1 and #2.

25. Plaintiffs did not learn that their loans had been canceled until receipt of IRS Forms (*Attachments 1 & 2)* in January, 2018.

26. Then, later in 2018, Plaintiffs learned that they no longer owned Timeshare Interests #1 and #2 at all because defendants had, again unilaterally and secretly, "foreclosed" on them.

27. Plaintiffs had received no notice of any impending legal action (foreclosure or otherwise) regarding any of their timeshares.

28. Canceled loans are obviously not subject to foreclosure since, having been canceled, they no longer exist to foreclose.

29. Therefore, Plaintiffs can only assume that the outstanding maintenance fees and "point assessments," that had been the subject of defendants' failed 2 settlement offers in 2017 (supra, ¶ 23), were the subject of whatever "foreclosures" secretly took place in 2018.

30. The purchase agreements that Plaintiffs and defendants signed stipulated that disputes thereunder would be settled in accordance with Florida law.

31. Under Florida law, as in many jurisdictions, foreclosures are judicial proceedings having intricate procedures with seemingly countless nooks and crannies. See Fla. Stat. Title XL, Chapter 702 (Foreclosures in Florida are judicial and proceed formally through its court system).

32. In addition, Florida has a statutory "Vacation Plan and Timesharing Act" (Id. at Chapter 721) that controlled in the circumstances at bar – it applies to both traditional liens and assessment liens.

33. Among other fundamental matters that the Act prescribes: "Service of process for a foreclosure proceeding involving a timeshare interest may be made by any means recognized by law." Id. at 721.85(1).

34. Plaintiffs received **no** process/notice of any "foreclosure" proceedings ever taking place; they were never offered an opportunity to participate in any judicial proceedings that never happened; they only learned after-the-fact that their properties were gone.

35. Plaintiffs' Interests #1 and #2 were wantonly "foreclosed" in blatant violation of Florida law.

36. Amazingly, Plaintiffs have received absolutely no financial proceeds from any "foreclosure" proceedings, which would have been substantial when mere $2,500 fee/assessment debts were "foreclosed" on each of 2 substantially valuable properties. Supra ¶¶ 21 & 22.

37. Defendants have advised that Plaintiffs' third, lien-free vacation interest (which they are still barred from using) will be "foreclosed" whenever defendants ... feel like it ... get around to it ... whatever. Unless defendants have already done so.

38. In sum, 3 valuable timeshare interests were shockingly taken (stolen) from Plaintiffs in contravention of their purchase agreement with defendants, and in stark violation of Florida state law.

WHEREFORE:

- Plaintiffs should be awarded judgment in the amount of $38,100.00, as compensation for the fair market value of their Interest #1 that was "foreclosed" without any factual or legal justification or basis.

- Plaintiffs should also be awarded judgment in the amount of $51,100.00, as compensation for the fair market value of their Interest #2 that was "foreclosed" without any factual or legal justification or basis.

- Plaintiffs should be awarded an additional judgment in an amount, as determined by an objective expert, equal to the fair market value of their Interest #3, which, if not yet illegally "foreclosed," has been stripped of any value to Plaintiffs by defendant's refusal to allow them to use it.

- Insofar as Florida law allows that when a "the defendant had a specific intent to harm the claimant and ... did in fact harm the claimant, there shall be no cap on punitive damages," this Court should also award punitive damages in the amount of $1,000,000.00, or such other amount that it deems sufficient to deter this corporate behemoth from ever again intentionally taking advantage of its perceived position of power to abuse its own customers.

- This Court should award to Plaintiffs all costs and other expenses associated with this litigation.

Respectfully submitted,

*[signature]*

Guy Ferrante

*[signature]*

Deborah Ferrante
*Pro Se Plaintiffs*
108 Shoreview Drive
New Bern, NC 28562
252-631-1252
Kingandeverhard@outlook.com